**Mary Kathleen LEMERE, Plaintiff,**

v.

**James H. BURNLEY, IV, Secretary of Department of Transportation, Defendant.**

**Civ. A. No. 87–1506.**

United States District Court, District of Columbia.

March 22, 1988.

As Amended May 6, 1988.

Irving Kator, Kator, Scott & Heller, Amy Wind, Washington, D.C., for plaintiff.

Bradley L. Kelly, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

REVERCOMB, District Judge.

Plaintiff Mary Kathleen LeMere filed this case seeking judicial review of the action of the Federal Aviation Administration ("FAA") of the Department of Transportation terminating her employment as a GS–13 Contract Specialist due to ongoing attendance and performance problems linked to alcoholism. In the Complaint, plaintiff argues that the FAA's decision to terminate her employment was arbitrary, capricious, not supported by substantial evidence, and otherwise contrary to law. *See* 5 U.S.C. sec. 7702(a)(2); 5 U.S.C. sec. 706(2). Plaintiff also maintains that the FAA violated the Rehabilitation Act, 29 U.S.C. sec. 791,[1] by terminating her employment in lieu of accommodating her handicap of alcoholism by means of a leave of absence that would have enabled her to enroll in an intensive in-patient alcoholism treatment program. On the cross-motions for summary judgment now before the Court, the only question presented is the extent to which the Rehabilitation Act compels a federal employer to accommodate an employee's recurrent alcoholism before terminating the individual's employment. The Court will grant summary judgment for defendant because, on the undisputed material facts, the Court concludes that the FAA fulfilled its duties to Ms. LeMere under the Rehabilitation Act prior to terminating her employment.

## I. *The Facts*

The material facts in this case are drawn from plaintiff's personnel records and from the transcript of administrative proceeding below.[2] Plaintiff was employed by the FAA for six years as a contract specialist prior to her termination on April 23, 1986. Tr. 97–98. Ms. LeMere is an acknowledged alcoholic and, starting in early 1984, the effects of disease became apparent at her job. Tr. at 99. On some days, she appeared for work intoxicated, and she also experienced seizures related to alcohol withdrawal. Dr. Barton Pakull, an FAA psychiatrist, observed plaintiff on some of these occasions and ultimately, in July

---

**1.** Plaintiff's Complaint cites both 29 U.S.C. sec. 791 and 29 U.S.C. sec. 794a. Section 791(b) requires federal executive agencies to implement affirmative action programs to employ handicapped individuals; section 794 prohibits beneficiaries of federal assistance from discriminating against handicapped individuals. Only section 791 applies to individuals, such as Ms. LeMere, who are alcoholics currently using alcohol and who are employees of federal executive agencies. *See* 29 U.S.C. sec. 706(8)(B). Accordingly, the Court will analyze this case only under section 791.

**2.** Citations to the Transcript of proceedings in this matter before the Merit Systems Protection Board shall be identified as "Tr."

1984, drove plaintiff to the Bethesda Naval Hospital ("Bethesda") for treatment at its in-patient detoxification unit. The FAA advanced Ms. LeMere approximately five weeks of sick leave to enable her to complete this program.

When plaintiff returned to work, she evidently remained sober for a short period of time but experienced a relapse during the autumn of 1984. This relapse, like plaintiff's previous bout with the disease, was accompanied by difficulties with colleagues and private industry contractors as well as by unscheduled absences from the office.[3] *See* Tr. at 5. Accordingly, in November 1984 and again in February 1985, the FAA issued plaintiff leave restriction letters. In March 1985 plaintiff obtained legal counsel to assist her with her escalating employment difficulties, but, despite the intervention of counsel, the FAA suspended plaintiff for two days in the summer of 1985.

On August 19, 1985, the FAA issued plaintiff a letter of proposed termination. When Ms. LeMere's counsel informed the FAA that she again had voluntarily entered a hospital's detoxification unit, the FAA rescinded the termination and granted Ms. LeMere a second leave of absence to facilitate treatment.

Shortly after her completion of treatment in September 1985, Ms. LeMere returned to work. Unfortunately, she experienced another relapse in November 1985. The FAA monitored Ms. LeMere's problems and, on February 27, 1986, issued a second notice of proposed termination. After negotiations with plaintiff's counsel, however, the FAA agreed on April 10, 1986 to stay plaintiff's termination and to give her a minimum of three months' leave without pay, but only if plaintiff fulfilled two conditions: (1) within three working days of the date of the letter, provided the signa-

tory of the letter with a signed statement of her agreement and intention to get help; and (2) within six working days from the date of the letter supplied a report from a prospective treating physician outlining a proposed alcoholism treatment program and follow-up. The FAA's decision to stay the termination also was "contingent upon [plaintiff's] successful completion of the approved rehabilitation program." *See* Wilson Letter of April 10, 1986.

Plaintiff first responded to this letter on April 15, 1986, when she sent the FAA a written statement indicating her agreement and intention to seek treatment for her alcoholism. In this letter, plaintiff also stated that she would meet with staff at Bethesda on April 21, 1986 for a referral to another alcohol rehabilitation program.[4] However, as she notified her supervisor in a telephone call the next day, plaintiff did not keep the April 21st appointment because she was intoxicated and could not drive. Tr. at 104. During the April 22nd telephone call, which plaintiff cannot recall because she continued to be intoxicated, she informed her supervisor that she would not come to work on April 22nd but more significantly, according to the supervisor's notes, stated that it was "ridiculous" for her to pursue further treatment for her alcoholism. *See* Note of G.B. Davey, Attachment 6 to Plaintiff's Memorandum.[5] Following this conversation, the appropriate FAA official immediately sent Ms. LeMere a mailgram terminating her employment because of her failure to comply with the conditions in the April 10, 1986 letter. *See* Wilson Telegram, Attachment 7 to Plaintiff's Memorandum.

Despite her April 22nd statement to her supervisor, however, plaintiff evidently had made inquiries about treatment programs and, on April 24, 1986, she entered Subur-

---

**3.** Throughout this period, Dr. Pakull also advised plaintiff, apparently with little success, to seek additional help with regard to her disease. Plaintiff also received treatment from a private psychiatrist.

**4.** The defendant notes that April 21st, the date of plaintiff's appointment at Bethesda, was technically beyond the six-working day deadline, which expired on April 18, 1986. The defendant

indicates that it was willing to waive compliance with the six-day deadline if plaintiff kept the appointment.

**5.** Although plaintiff does not recall making this statement, she has seen her supervisor's notes and does not challenge their veracity. Thus, the parties' differing versions of the April 22, 1986 conversation do not raise a triable issue of fact.

ban Hospital's inpatient detoxification unit. Tr. at 84, 106, 109. Plaintiff's counsel immediately notified the FAA and requested the agency to rescind plaintiff's termination. *Id.* The FAA, without consulting Ms. LeMere's treating physicians or other experts, declined to rescind the termination. Tr. at 84. Ms. LeMere appealed this decision to the Merit Systems Protection Board, which affirmed the FAA.

Plaintiff exhausted her administrative remedies.

## II. *Applicable Statutes and Regulations*

■ Alcoholism is a handicapping condition for purposes of the Rehabilitation Act, 29 U.S.C. sec. 791(b) ("the Act"). *Whitlock v. Donovan,* 598 F.Supp. 126, 129 (D.D.C. 1984), *aff'd sub nom. Whitlock v. Brock,* 790 F.2d 964 (D.C.Cir.1986). The Act requires federal executive agencies such as the Department of Transportation, Federal Aviation Administration ("FAA") to submit affirmative action program plans for the "hiring, placement and advancement of individuals with handicaps" to the Equal Employment Opportunity Commission ("EEOC"). 29 U.S.C. sec. 791(b). The EEOC in turn has promulgated regulations setting forth the policy under which the executive agencies must establish and implement these programs. 29 C.F.R. sec. 1613.701(a). Specifically, the EEOC has stated that:

> [a]n agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

29 C.F.R. sec. 1613.704(a). Under the regulations, a qualified handicapped employee is an employee who can, "with or without reasonable accommodation, perform the essential functions of the position in question." 29 C.F.R. sec. 1613.702(f).

The Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment, and Re-

habilitation Act of 1970, 42 U.S.C. sec. 290dd-1 ("the Comprehensive Alcohol Abuse Act"), referenced in plaintiff's Memorandum, also pertains to the rights of alcoholic federal employees. The legislative history of this provision states that "[a]n [alcoholic] employee who has accepted treatment should be dismissed for medical reasons only when he has been granted sick leave, treatment has repeatedly failed, and he is clearly not capable of meeting the demands of his job." [6]

## III. *Discussion*

■ Although the Court regrets plaintiff's predicament, and recognizes that a single failure to communicate finally triggered her termination from a job held for six years, this Court concludes that the Rehabilitation Act does not require the FAA, as a matter of law, to make additional efforts to accommodate plaintiff's handicap. The FAA's efforts to accommodate plaintiff's handicap certainly can be characterized as reasonable and, at times, even more than reasonable. The FAA gave plaintiff two extended leaves-of-absence to enable her to receive inpatient treatment without losing her job. An FAA psychiatrist personally drove plaintiff to Bethesda for treatment on one occasion, and attempted to counsel her on many others. Despite two leave restriction letters, complaints from other agency employees, and one rescinded termination, the FAA still was willing to arrange a third leave of absence—albeit under limited conditions—in lieu of termination in April 1986. Even the Comprehensive Alcohol Abuse Act, *supra,* acknowledges that federal employers can terminate alcoholic employees when repeated efforts at treatment and accommodation prove unsuccessful. *See supra* note 6.

Indeed, Judge Pratt's decision in *Robinson v. Devine,* 37 FEP Cases 728 (D.D.C. 1985) [Available on WESTLAW, 1985 WL 385], upholding an alcoholic employee's termination from employment at the Department of Labor, reached this same result on similar facts. Like Ms. LeMere, the em-

---

**6.** *Whitlock v. Donovan,* 598 F.Supp. 126, 131 n. 8 (D.D.C.1984) (quoting S.Rep. No. 1069, 91st Cong., 2d Sess. 20 (1970)), *aff'd sub nom. Whitlock v. Brock,* 790 F.2d 964 (D.C.Cir.1986).

ployee in *Robinson* had received two reprimands, a short suspension, and a notice of proposed termination that was suspended when he requested sick leave to participate in a detoxification program. 37 FEP Cases 729. Also, the agency in *Robinson* decided to uphold the removal of the alcoholic employee even though it was advised, as in the current case, that the employee was receiving treatment at the time of his termination. *Id.* at 730. Based on these facts, Judge Pratt concluded that the agency's conduct "'went the last mile'" and satisfied the accommodation requirements of the Act. *Id.* This Court reaches the same conclusion with regard to the FAA's conduct in the current case.[7]

The Court also rejects plaintiff's arguments under *Whitlock v. Donovan, supra,* 598 F.Supp. 126, that the policy underlying the Rehabilitation Act required the FAA to avoid a technical enforcement of its April 10, 1986 letter and, if it still intended to terminate the plaintiff, to first obtain a full medical evaluation. Plaintiff's argument is premised on a faulty application of the principles of *Whitlock* to the current case. In *Whitlock,* the Department of Labor fired an alcoholic employee without giving him a "firm choice" of treatment or discipline and also without exploring the possibility of a second extended leave of absence in lieu of termination. *See Whitlock, supra,* 598 F.Supp. at 136–37. Reviewing these facts, the *Whitlock* Court apparently was troubled as much by the agency's longstanding indecisiveness and failure to adhere to available personnel procedures as by its failure to exhibit, on occasion, sufficient leniency with regard to the employee. *Id.* By contrast to the indecisiveness illus-

trated by the agency in *Whitlock,* however, the FAA in the current case followed the proper procedures, gave Ms. LeMere several "firm choices" and finally, when confronted with the need to remove her, balanced its own hardship against her need for treatment and offered her another leave of absence in lieu of removal. Having taken these steps, the FAA certainly is not required by the decision in *Whitlock* to give what would amount to an indecisive interpretation to the April 10th letter. Indeed, the *Whitlock* court emphasized the importance of decisiveness and stated that "[a]n agency is required to follow through on its firm choices." 598 F.Supp. at 134.

More to the point, the FAA was not required to rescind the termination when it learned that plaintiff indeed had entered a treatment program. It was the precise type of conduct exhibited by Ms. LeMere between April 22nd and April 24th—unreliable and erratic—that, although caused by alcoholism, had in fact become the "undue hardship" that the FAA was no longer willing to tolerate.[8] The Court notes that plaintiff's breach of her agreement on April 22 was not a mere technicality: the FAA had shown itself to be flexible in terms of holding plaintiff to the specific deadlines of the agreement, but plaintiff's April 22 refusal to seek treatment violated the spirit and purpose of the agreement. Because the FAA had determined that plaintiff's erratic conduct had become an "undue hardship" to its operations, the agency was justified in acting promptly in response to the breach, and also in declining to accommodate Ms. LeMere after learning that she had changed her course of action.[9]

---

**7.** *Robinson* can be distinguished from the current case because, in *Robinson,* the requirements of the Act did not attach until the first proposed termination, when the employee officially informed the agency of his alcoholism. 37 FEP Cases at 730. Judge Pratt's analysis therefore included only one leave of absence and therefore involved less accommodation than the current case.

**8.** The fact that plaintiff's erratic conduct was a symptom of her alcoholism does not, in itself, invalidate this analysis. The FAA terminated plaintiff only after reasonably accommodating her disease.

**9.** Plaintiff's argument that her reinstatement and third leave of absence could not amount to an undue hardship misses the mark. Plaintiff maintains that the agency evidently decided that a third leave of absence would not be an undue hardship because it offered her such a leave in the April 10 letter. Therefore, plaintiff suggests, it should not matter if she receives that leave of absence even though she breached the April 10th agreement. In the view of this Court, it was plaintiff's irregular conduct more than her absence from the worksite that was the undue hardship for the FAA. Therefore, plaintiff's reinstatement after her irregular conduct on April

The FAA was not required to conduct a full medical investigation of Ms. LeMere before implementing its decision to terminate her. The Court in *Whitlock* stated that the purpose of a medical investigation is for the agency to determine whether an employee's problems are related to alcoholism, and thus to determine the agency's duties under the Rehabilitation Act. 598 F.Supp. at 137. In this case both Ms. LeMere and her attorney admitted orally and in writing that her employment difficulties were alcohol-related; accordingly, a full medical examination intended to prove the same thing would be redundant. *Accord Robinson, supra,* 37 FEP Cases at 730 n. 1. Moreover, plaintiff's reliance on *Mantolete v. Bolger,* 767 F.2d 1416 (9th Cir.1985), is unpersuasive because the facts in that case can be distinguished from those in the current case. In *Mantolete,* the medical evaluation was required to provide the agency with balanced information regarding an applicant for employment who had a history of alcoholism. In the current case, however, Ms. LeMere was a long-term employee with whom management was familiar, and not an unknown job applicant. The agency was required to ascertain the nature of plaintiff's problem—and that it was a handicapping condition under the Rehabilitation Act—and not to obtain a consensus on her medical prognosis.

 Finally, the Court notes that an alternate rationale for its decision could be that plaintiff's two-year pattern of unscheduled absences removed her from the protections of the Rehabilitation Act as someone who had lost the status of a "qualified handicapped employee." 29 C.F.R. sec. 1613.704(a). Plaintiff's unscheduled absences prevented her from following a regular work schedule under which she could "perform the essential functions" of her position, the minimum requirement for qualified handicapped employees. 29 C.F.R. sec. 1613.702(f). Therefore, plaintiff was not covered by the Act. *Matzo v. Postmaster General,* 685 F.Supp. 260,

262–63 (D.D.C.1987); *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn.1986).

The Court has filed a Judgment Order entering judgment for the defendant in accordance with this Memorandum.[10]

---

22 would amount to an undue hardship for the agency.

**10.** Because defendant did not violate the Rehabilitation Act, he also did not act arbitrarily and capriciously.