838 F.2d 467
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John A. RODGERS, Appellant,
v.
John F. LEHMAN, Jr., Secretary of Department of Navy;
United States Department of the Navy, Appellees.
 No. 86-1047.
 United States Court of Appeals, Fourth Circuit.
 June 18, 1987.
 
 David P. Sutton on brief for appellant.
 Robert V. Zener (Anthony J. Steinmeyer; Richard K. Willard, Assistant Attorney General; Justin W. Williams, United States Attorney, on brief), for appellees.
 Before WIDENER and SPROUSE, Circuit Judges, and TERRENCE WILLIAM BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 John A. Rodgers appeals from a summary judgment in favor of the Secretary of the Navy in this dispute over the discharge of Rodgers for alcohol-related absences. Because we conclude that the record does not preclude a genuine issue of material fact, we reverse and remand.
 
 
 2
 Rodgers has been employed as a civilian in the United States Navy since September 1964. While serving as a civilian employee in the Navy, Rodgers worked as a Construction Project Manager, GS-13. In this position, he was responsible for the progress and continuity of certain military construction projects assigned to him. Rodgers remained in this job until his removal in 1984.
 
 
 3
 Beginning in 1978, Rodgers began taking excessive leave. In 1978, Rodgers took a total of 404 hours of leave and was absent on leave for 367 hours during the first ten months of 1979. This caused Rodgers' employer to send him a Letter of Requirements which attached certain conditions on Rodgers' ability to receive annual and sick leave.
 
 
 4
 However, despite the conditions imposed on him by the Letter of Requirements, Rodgers' absentee problems persisted. Documents appearing in the record show that Rodgers took leave without complying with the Letter of Requirements. Accordingly, the Letter of Requirements was tightened and additional conditions were placed on Rodgers before he would be given approved leave.
 
 
 5
 In November 1981, at the request of a medical doctor, Rodgers was given 30 days' leave without pay. The physician's request cited gastrointestinal problems on the part of Rodgers, and did not mention anything about alcoholism. Until this time, the Navy had no knowledge of Rodgers' alcohol abuse problem.
 
 
 6
 In April 1982, the Navy received notice that Rodgers' problem was alcohol related; it may well have existed for some considerable prior time. Rodgers' supervisor thereafter made an appointment for Rodgers to meet with a Navy counseling specialist in order to discuss the assistance available for alcoholics. The counselor, after meeting with Rodgers, made an appointment for Rodgers to meet with a Navy counseling specialist in order to discuss the assistance available for alcoholics. The counselor, after meeting with Rodgers, made an appointment for Rodgers to meet with an alcohol treatment program. However, Rodgers initially resisted treatment. In May 1982, Rodgers was counseled by his supervisor about his absenteeism and tardiness. Then, in June of that year, he received another Letter of Requirements that further tightened his leave authorization procedures. In this letter, Rodgers was warned that failure to comply would resort in his absences being classified as Absences Without Leave (AWOL) and that AWOL absences might result in disciplinary action. In August 1982, Rodgers voluntarily checked himself into Fairfax Hospital, where he underwent alcohol treatment for nine days.
 
 
 7
 After leaving Fairfax Hospital program, Rodgers began attending Alcoholics Anonymous (AA) meetings. However, about the first of the following year, Rodgers stopped attending AA meetings and his problems with absences resumed. In March 1983, Rodgers was given an unsatisfactory performance rating, and he missed some work in March, apparently alcohol related. After returning to work in April, Rodgers once again refused to enroll in the treatment program run by the Pentagon. Rodgers had more unauthorized absences during the summer and was warned in October that further unauthorized absences would not be acceptable. Rodgers was also suspended from work for four days because of his absences. It was around this time that Rodgers enrolled in the Pentagon's treatment program, which he attended until January 1984. Rodgers' completion of the program was temporarily successful; but, in February and March of 1984, there were more absences. As a result, Rodgers received a 14-day suspension.
 
 
 8
 Rodgers was charged with being AWOL from May 14 to May 26, 1984, and, as a result, his supervisor issued a letter which formally proposed his discharge. Before this letter was issued, Rodgers was orally notified that his removal would be formally proposed. A few days earlier, Rodgers had asked for 30 days' leave in order to seek medical treatment. Although Rodgers' request was granted, he was told that his extended absence in pursuit in medical treatment would have no bearing on the issuance of the notice letter. Rodgers used the 30 days' leave to attend voluntarily an alcoholic clinic in Maryland for 28 days. While Rodgers was in the rehabilitation program in Maryland, the notice of proposed dismissal was issued. The decision to discharge Rodgers was made final on July 20, 1984.
 
 
 9
 Following an unsuccessful appeal to the Merit Systems Protection Board, Rodgers sued in the district court, claiming that the agency had failed to accommodate his handicapping condition (alcoholism) before dismissing him. The district court viewed the case as presenting the question of whether the Navy had complied with relevant regulations and personnel standards. Having concluded that this was done, the lower court granted the Navy's motion to dismiss or, in the alternative, for summary judgment. Rodgers appealed.
 
 
 10
 We agree with the district court's conclusion that an agency's regulations and personnel standards must be considered in reviewing that agency's actions in discharging an employee. See Whitlock v. Donovan, 598 F.Supp. 126, 132, 133-34 (D.D.C.1984. However, we disagree with the lower court's conclusion that the Navy complied with all such standards. We believe that a genuine issue of material fact exists regarding whether the Navy complied with the requirements of Federal Personnel Manual (FPM) Supplement 792-2 (February 1980). This section of the Federal Personnel Manual requires a supervisor, in dealing with an employee's alcohol problems, to
 
 
 11
 "... provide a firm choice between accepting agency assistance through counseling or professional diagnosis of his or her problem and cooperating in treatment if indicated, or accepting consequences provided for unsatisfactory performance." FPM Supplement 792-2 at subchapter S2-2 a(5) (emphasis added).
 
 
 12
 While we express no opinion on the ultimate outcome of this case, and we especially note that the Navy has been long suffering and tolerant, we have to recognize that the record does not indicate any such "firm choice," given to Rodgers. Our conclusion requires that we vacate the judgment of the district court and remand for proceedings consistent with this opinion. In this posture it is unnecessary for us to address any of the other issues raised in this appeal.
 
 
 13
 VACATED AND REMANDED.