Clarence FERGUSON, Plaintiff,

v.

UNITED STATES DEPARTMENT OF
COMMERCE, Defendant.

No. 86–079–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

March 1, 1988.

Michael Schwartzberg, Law Firm of Rog-
er C. Benson, St. Petersburg, Fla., for
plaintiff.

Peter B. Loewenberg, Asst. U.S. Atty.,
Tampa, Fla., and Thomas Conley, Office of

Gen. Counsel, Dept. of Commerce, Washington, D.C., for defendant.

## MEMORANDUM OPINION

KOVACHEVICH, District Judge.

This case came on for trial on February 8, 9 and 10, 1988, before this Court, sitting without a jury. Plaintiff alleges that on November 12, 1983, Defendant fired him without making reasonable accommodation for Plaintiff's handicap, to wit: alcoholism.

After consideration of the testimony, exhibits, pre-trial stipulation, and arguments of counsel, the Court makes the following findings of fact and conclusions of law. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent any conclusion of law constitutes a finding of fact, they are adopted as such. All matters not specifically argued by the parties in the post-trial briefs are deemed waived and objections thereto **denied.**

The Court reserved ruling on Defendant's 41(b) motion; the motion was renewed at the close of Defendant's case. The Court now **denies** that motion.

## FINDINGS OF FACT

1. This is an action alleging handicap discrimination wherein Plaintiff claims that the personnel of the National Marine Fisheries Service (NMFS), St. Petersburg, Florida, discriminated against the Plaintiff by firing him for his excessive absenteeism.

2. Clarence Ferguson, born on October 31, 1939, was a GS–9 Support Services Specialist for the NMFS, a part of the National Oceanographic and Atmospheric Administration (NOAA), which is a sub-agency of the Department of Commerce. He was a federal employee for approximately 20 years prior to 1981.

3. Prior to his employment at NMFS, Plaintiff had been drinking for many years, and he experienced his first blackout at age 17.

4. Beginning in November, 1980, until his formal separation from the federal service on November 12, 1983, Ferguson was absent for 389 days. This was a combination of annual leave, sick leave, leave without pay and absent without leave. This does not include a thirty day suspension.

5. As early as April, 1981, serious thought was given to removing the plaintiff. Testimony by Brawner indicated that removing the Plaintiff was put off for over 2½ years due to attempts to accommodate Plaintiff's *known* medical and psychological problems.

6. Plaintiff's alcoholism was the direct cause of his absenteeism and his violation of leave restrictions and subsequent disciplinary actions. From time to time, there were additional concurrent causes for Plaintiff's absenteeism, such as "being on strike," marital problems and physical problems, both alcohol-related and unrelated.

7. Prior to November, 1980, Plaintiff had no problems with attendance, and was capable and qualified to perform his job functions. Plaintiff was an exemplary employee.

8. Plaintiff is an alcoholic and was an alcoholic during his periods of extended absenteeism between November, 1980 and November 12, 1983.

9. During the period of November, 1980 and November 12, 1983, Plaintiff was capable of performing his job functions on the days that he was in attendance.

10. Plaintiff never directly informed the Defendant of his alcoholism until November 14, 1983.

11. Alcoholism is a disease which becomes progressively worse unless successfully treated. Alcoholics typically deny their handicap, and conceal, excuse and lie about their drinking and the problems that it causes them at home and at work.

12. Treatment of alcoholism focuses initially on a basic need to force the alcoholic to recognize his handicap.

13. Drs. Paul McRae and Newton Rogers testified that manifestations of alcoholism in the workplace include poor job performance, absenteeism, lateness and erratic behavior.

14. In 1981 or early 1982, Plaintiff attended AA (Alcoholics Anonymous) meetings, recognizing that he had a problem with alcohol. Despite Plaintiff's apparent recognition of his problem, he chose not to tell NMFS officials about his drinking and its relationship to his absences.

15. At various other times, Plaintiff provided legitimate medical excuses for his absences that had no known relationship to alcohol abuse. Plaintiff also promised to return to work on a certain date but on several different occasions did not keep his promise. He failed to report as scheduled and did not call in to explain his absence. On many occasions, Plaintiff failed to have leave slips properly prepared and approved.

16. Plaintiff confided to several people that he was having marital difficulties. When he confided to his supervisor that his marriage was in difficulty, he was told about the availability of appropriate counseling.

17. Plaintiff was made aware by NOAA that counseling was available for whatever causes might be troubling him.

18. In August, 1982, Plaintiff voluntarily checked himself into the detoxification unit of St. Anthony's Hospital. Plaintiff ordered that St. Anthony's *not* divulge the fact that he was hospitalized for alcohol abuse.

19. Plaintiff admitted orally and in writing that he had a problem with alcohol to the staff members of St. Anthony's.

20. Many witnesses testified that during the Plaintiff's employment, he never smelled of alcohol, never staggered or slurred his words, never tried to sneak drinks, came in early, and conscientiously and competently did his job.

21. Plaintiff was transferred in December, 1982. This was designed to alleviate job stress for Plaintiff. After a month and one-half, Plaintiff began to miss work again, in February, 1983.

22. A 30 day suspension was imposed effective in April, 1983 in an attempt to correct Plaintiff's absenteeism.

23. During the suspension, Plaintiff phoned his supervisor, Beverly Eggeman, and told her that he wanted to speak to Brawner, Furlong and Eggeman, to tell them something important about his problems; ("Lay a big one on you"), but was told to speak to Brawner after the suspension was over.

24. At the close of the suspension, Plaintiff did not return to work the next day. When he did return, Plaintiff did not tell anyone his secret, nor did anyone ask him what he had meant by the cryptic phrase message.

25. When Plaintiff returned to work following the suspension, Dan Furlong offered to discuss whatever problems Plaintiff might have, in the hope that referral could be made to the appropriate individual to help Plaintiff with the problem, within, or outside of, the agency. Plaintiff did not tell Furlong about his alcoholism at that time.

26. After the suspension, Plaintiff's absenteeism continued. Plaintiff gave a variety of reasons for his absenteeism.

27. Plaintiff's removal was proposed on June 24, 1983. This proposed removal was rescinded because Dan Furlong believed Plaintiff might have cancer.

28. Plaintiff was hospitalized in June and July, 1983 at Bayfront Medical Center, with a final impression of upper gastrointestinal bleeding secondary to gastritis from ethanol use, ethanolism, and hemorrhoids by history.

29. Plaintiff was hospitalized on October 8, 1983 at Bayfront Medical Center, with a final diagnosis of pancreatitis, probable alcoholic hepatitis and chronic alcoholism.

30. Plaintiff was hospitalized on October 29, 1983 at Bayfront Medical Center, with a final diagnosis of alcoholic gastritis and mild pancreatitis.

31. Plaintiff's continuing absences had a severely demoralizing effect on the office where he worked.

32. Because Plaintiff's erratic attendance continued, and NMFS' ability to accommodate him was exhausted, a second

proposal to remove Plaintiff was issued on October 7, 1983.

33. Although the second proposal to remove Plaintiff gave him seven (7) days for response, this time period was extended to October 28, 1983.

34. After his release from the hospital on October 13, 1983, Plaintiff did not return to work.

36. On the date that Plaintiff's response to the proposed removal was due, Plaintiff admitted himself to the hospital.

37. Plaintiff provided information regarding his alcohol abuse to Defendant on November 14, 1983, *after* his termination had occurred.

38. Defendant testified that the decision to remove was reconsidered in light of the additional evidence provided by Plaintiff, but that the decision to terminate remained after reconsideration.

39. Defendant testified that a fitness for duty examination was requested but the Kansas City office denied the request.

40. In a memorandum to Plaintiff's file dated November 16, 1983, Dan Furlong stated: "This is the first time that any evidence of an alcohol problem has been made known to me. I am not exactly surprised by this, but by the same token, I never felt sure that Clarence did have a drinking problem."

41. Rosa Hill's testimony reveals that she considered, but discarded, the possibility that Plaintiff had an alcohol problem.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter herein pursuant to 29 U.S.C. Sections 791 and 794a, and 5 U.S.C. Section 2302(b)(1)(D).

2. Plaintiff is and was at all applicable times a qualified handicapped individual within the confines of 29 U.S.C. Section 791 and 5 U.S.C. Section 2302(b)(1)(D).

3. Plaintiff has brought forth sufficient evidence to compel the conclusion that Defendant should have known that Plaintiff was an alcoholic. Plaintiff's chronic excessive absenteeism, his frequent failure to return to work on the dates promised with no notification, and failure to obtain appropriate leave slips, occurring after some twenty years of exemplary service, should have signalled an underlying problem requiring further investigation. If Defendant had undertaken that investigation, an analysis of Plaintiff's medical records would have clearly shown that the underlying problem was alcoholism.

4. Defendant failed to provide reasonable accommodation to the Plaintiff's handicap.

5. "In order to afford reasonable accommodation to an employee who is handicapped by alcoholism, an agency must offer the employee rehabilitative assistance and allow him an opportunity to take sick leave for treatment, if necessary, before initiating any disciplinary action for continuing performance or misconduct problems related to his alcoholism." *Ruzek v. General Services Administration*, 7 MSPB 307, 311, 7 M.S.P.R. 437 (1981).

6. Lack of knowledge relieves the agency of responsibility for reasonable accommodation, but this duty attaches where the agency has knowledge "of factors from which the handicap might reasonably be inferred." *Brink v. Veterans Administration*, 4 MSPB 472, 4 M.S.P.R. 419 (1980).

7. The Court finds that Defendant was ignorant of the common symptoms of alcoholism, including chronic absenteeism, and this ignorance prevented the recognition of Plaintiff's problem. The NOAA Personnel Handbook elaborates on the supervisor's responsibilities:

1. *Problem Recognition.*

a. A supervisor, because of special proximity to the employee, is best able to observe the employee's absentee pattern, change in behavior, change in work performance, or other indication of potential or immediate problem. **It is the supervisor, therefore, who must take NOAA's initiative in recognizing and dealing with an employee's potential or immediate problem.** (Emphasis added).

b. In dealing with a troubled employee, the supervisor must keep in mind that

the emphasis must be on impaired performance, that is, absentee patterns, changes in behavior, changes in performance or other indications of potential or immediate problems. Assistance to an employee may be required, such as treatment referral in the case of illness, or alcohol or drug addiction.

8. The Court finds that it does not require omniscience to recognize a potential problem with substance abuse when the troubled employee is absent 389 days out of a three year period, regardless of the variety of apparently reasonable excuses provided. A chronic problem of this severity should have compelled attention.

9. The Court finds that Defendant tolerated Plaintiff's erratic work performance for far too long, thus contributing to the progression of Plaintiff's disease by delaying entry into a rehabilitation program. The Court realizes the difficulty inherent in determining exactly when "too long" is, in any given factual situation, but, based on the facts before the Court, the three year period in this case is *clearly too long.* The low morale of the other employees in Plaintiff's office and any hardship therein was caused by this tolerance of Plaintiff's chronic absenteeism.

10. The *Federal Personnel Manual System Supplement 792–2, Alcoholism and Drug Abuse Programs* (1980), imposes upon the supervisor a duty if he suspects an employee of having an alcohol problem. This duty consists of conducting an interview with the employee and advising him of available programs.

11. The Court notes that Plaintiff's supervisor was not required by the applicable regulations to personally confront Plaintiff. Dan Furlong did refer Plaintiff to Rosa Hill for appropriate evaluation. The evidence shows that both Dan Furlong and Rosa Hill suspected that Plaintiff had a drinking problem. At one point Rosa Hill raised the subject of disability retirement with Plaintiff. Rosa Hill suspected some disabling health problem; however, she failed to recognize Plaintiff's underlying problem. For this reason, Defendant never referred Plaintiff to the appropriate program, nor offered Plaintiff a "firm choice" to participate in an alcohol rehabilitation program or face disciplinary action.

■ 12. **After Defendant terminated Plaintiff, Defendant considered the evidence of alcoholism that Plaintiff presented but did not change the decision to terminate upon reconsideration. The Court finds that this decision was in error.** The evidence has shown that Plaintiff's disciplinary problems grew progressively worse as Plaintiff's disease grew progressively worse. Plaintiff's health problem was clearly deeply rooted and chronic. Plaintiff suffered from the effects of his disease throughout the time period at issue. Defendant relies on the fact that Plaintiff presented his evidence too late; in effect, Defendant maintains that a procedural default cuts off all of Plaintiff's substantive rights. In light of the denial which is characteristic of Plaintiff's disease, the medical evidence which confirms the reality of Plaintiff's disease, and the short time period (16 days) which elapsed before Plaintiff acted to cure his default, the Court concludes that Defendant erred in denying Plaintiff's request for reconsideration.

13. "In fashioning equitable relief for violations of affirmative-action duties to handicapped employees, a court 'may take into account the reasonableness of the cost of any necessary work place accommodations, the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.'" *Whitlock v. Donovan,* 598 F.Supp. 126, 137 (D.C.Cir.1984), citing 29 U.S.C. Sec. 794a(a)(1).

■ 14. The Court believes that the appropriate remedy in this case is to allow Plaintiff to reapply at the Department of Commerce and promptly undergo a fitness-for-duty examination at the Department's expense. The application for re-employment shall be made within the next thirty days or Plaintiff will be deemed to have waived his right to re-employment. The examination will be conducted by a physician or physicians acceptable to the parties, who have no prior connection with Plaintiff. Examination shall include a current assessment of Plaintiff's alcoholism, his mental acuity and his physical fitness for

duty. If he is now found fit for re-employment in his prior position, or in another position at an equivalent or lower grade, the Department shall offer to rehire him at that grade. If not, the Department shall allow him to seek disability retirement as of the date of his application for re-employment.

15. Plaintiff is entitled to back pay from November 12, 1983 until the date of either rehiring or disability retirement, whichever is applicable, at the GS–9 pay schedule.

16. Plaintiff is accorded all salary increases, merit increases and benefits as if termination did not occur.

17. The Plaintiff is awarded costs of this litigation.

18. The Plaintiff is entitled to an award of reasonable attorney's fees. Plaintiff shall submit his motion for attorney's fees within thirty days of the date of this Order.

19. The Court retains jurisdiction to determine the amount of costs and attorney's fees.

20. The Clerk is directed to enter a final judgment for Plaintiff consistent with this opinion.

IT IS SO ORDERED.