**Joseph Lee FONG, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the TREASURY, et al., Defendants.**

Civ. A. No. 86–2297.

United States District Court, District of Columbia.

Jan. 31, 1989.

Philip R. Kete, Gaffney, Schember & Kete, Washington, D.C., for plaintiff.

Diane Sullivan, Asst. U.S. Atty., Washington, D.C., for defendants.

## OPINION AND ORDER

REVERCOMB, District Judge.

Plaintiff Joseph Lee Fong brought this suit to challenge the firing of him as an employee by defendant Department of the Treasury. He seeks review, under the Civil Service Reform Act, 5 U.S.C. § 7703, of the decision of the Merit Systems Protection Board upholding his firing. He also pursues *de novo* a claim of discrimination against him because of his alcoholism, in violation of the Rehabilitation Act, 29 U.S.C. §§ 791–794, as construed by the courts. Both sides have moved for summary judgment; oral argument was heard on November 14, 1988. In this Opinion and Order, the Court denies summary judgment on behalf of plaintiff and grants summary judgment on behalf of defendant.

### I. Undisputed Facts

Mr. Fong was employed in 1985 as a Securities Transaction Analyst at the grade of GS–9 for defendant Department of the Treasury. He had worked at the Department since 1978. After Mr. Fong used between October 1, 1984, and March 31, 1985 a total of 443 hours of leave—some annual leave, some sick leave, some leave without pay, and some absences without leave (AWOL)—a supervisor on April 1, 1985 placed "leave restrictions" on Mr. Fong that required that he seek advance approval for all annual leave, schedule and document in advance if possible all leave taken for medical reasons, and document expeditiously all reasons for unscheduled leave. On June 24, 1985, a supervisor required by formal letter that Mr. Fong provide medical documentation by July 1, 1985, for the illness that he had said was responsible for a number of his previous absences. This request was made in accordance with law. 5 C.F.R. Part 339. The documentation was to include the history of the condition, clinical findings including laboratory tests, an assessment of current and future plans for treatment, diagnosis, an estimated date of recovery, an explanation of the impact of the condition on Mr. Fong's job, and other detailed medical information.

Although he did receive extensions of this deadline until July 27, 1985, Mr. Fong did not provide the documentation to his supervisor that summer. During July, 1985, Mr. Fong stated and a supervisor confirmed that much of the problem in securing the documentation was attributable to Mr. Fong's doctor. On July 9, 1985, the supervisor spoke to the doctor about the necessity of the doctor's providing Mr. Fong with the necessary documentation. The supervisor stated that the doctor was unhelpful and said that the matter was something between Mr. Fong and his lawyer.

Mr. Fong was absent from work for all or part of a number of days in June, July, and August, 1985, blaming car trouble, among other things. He also was absent from September 20, through October 1, 1985. Mr. Fong called his supervisor during this last absence, told the supervisor of his medical problem, and was advised that he needed to bring in medical documentation. When he returned to work on October 2, 1985, Mr. Fong provided a letter signed by the doctor, which stated that Mr. Fong had been under the doctor's care during this time. The letter mentioned "Nervousness", "Chronic Severe Gastritis", and "Low Back Syndrome,—(Sacro–Iliac Sprain)." However, it contained no other substantive medical information and at places bordered on being incoherent. It failed to provide Mr. Fong's employer with any serious evaluation of Mr. Fong's problems, state whether Mr. Fong had to miss work as often as he had been, or predict when or if Mr. Fong would recover. The letter concluded by stating:

> On a medical basis I can not predict sudden incapacitations here. The same goes for duty restrictions. Also as to being injured while working on the job. If guide lines are followed it should not happen but who can say.

Mr. Fong's supervisor concluded that the letter was not responsive to the request of June 24, 1985, and that Mr. Fong was charged with being absent without leave (AWOL) during late September. On October 28, 1985, a supervisor proposed that Mr. Fong be fired because of (1) failure to provide the requested medical documentation within the required time, (2) failure to follow the leave restrictions imposed on April 1, resulting in 36 hours of AWOL between June and mid-September, 1985, and (3) failure to provide administratively acceptable medical documentation as requested on June 24, resulting in 88 hours of AWOL for the time Mr. Fong was absent in August and late September. Mr. Fong was fired, effective December 6, 1985.

Mr. Fong challenged the decision to fire him before the Merit Systems Protection Board (MSPB). The MSPB affirmed the agency's action, including finding no merit to plaintiff's claim of handicap discrimination. *Fong v. Department of the Treasury,* No. DC07528610109 (M.S.P.B. March 26, 1986).

Mr. Fong appealed the decision of the MSPB in this action, filing a complaint on August 20, 1986. After defendant filed a motion for summary judgment in 1988, Mr. Fong in his opposition revealed publicly for the first time that he suffered from alcoholism and that some of his absences were to due to his alcoholism. He provided medical documentation for the claim that he was suffering from Post–Traumatic Stress Disorder (PTSD) as a result of his experiences as a combat soldier in Vietnam. Mr. Fong received a Purple Heart for his fighting in Vietnam, but also returned home with a recurrent back problem from parachute jumps and PTSD accompanied by secondary alcoholism.

In his opposition to defendant's motion for summary judgment, Mr. Fong claimed that his employer knew or should have known of the alcohol problem, but failed to give him the protections that federal government employers must provide to alcoholics.

## II. Review of the MSPB

When reviewing on the record a decision of the MSPB, a court must uphold the decision unless it is shown to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in violation of legal procedures, or unsupported by substantial evidence. 5 U.S.C. § 7703(c).

■ The MSPB concluded that Mr. Fong's employer proved by a preponderance of the evidence that its removal of Mr. Fong for misconduct was justified. The key element of the decision to fire and of the MSPB's approval of that decision was the failure of Mr. Fong to provide the required medical documentation for his past and future absences attributable to medical problems. This failure resulted in both the first and third reasons for firing Mr. Fong.

Mr. Fong does not dispute that he failed to provide the documentation within the required time period; nor does he argue with the conclusion of his employer that the documentation provided on October 2, 1985, was deficient. Rather, Mr. Fong argues that he cannot be "punished" for his doctor's reluctance or delay in providing the documentation—a reluctance confirmed by a supervisor on July 9, 1985—or for deficiencies in the documentation supplied on October 2, 1985. Moreover, Mr. Fong argues that if the documentation was found to be insufficient, his employer could have ordered its own, independent examination. In response, defendant contends that because Mr. Fong "chose" his doctor and should have realized that the documentation of October 2, 1985, was insufficient, Mr. Fong cannot avoid blame.

The Court does *not* need to agree with defendant that Mr. Fong is "responsible" for his doctor's alleged shortcomings for it to rule in favor of defendant on this issue. Although the doctor appeared reluctant in July to provide expeditiously the documentation requested, it remained the responsibility of Mr. Fong to secure the medical documentation requested of him. In the time between his discussions with supervisors in early July, 1985, and his absences in late September, 1985, Mr. Fong apparently never approached his supervisors about his failure to provide the documentation. Nor does he allege that he took any steps to get the documentation, despite knowing that he was required to provide the documentation by July 27, 1985, or suffer serious disciplinary action. This negligence in failing to secure the documentation—either by seeing another doctor, pursuing the matter with his own doctor, or requesting help from his employer—was inexcusable. After his initial failure to get the documentation from his physician in late June and early July—supposedly due to the press of time, the doctor being locked out of his office, etc.—Mr. Fong should have continued to do everything in his power to get the required documentation, knowing as he did that his job was likely in the balance. This Mr. Fong apparently did not do. Instead, nothing happened until September, when Mr.

Fong abruptly missed two weeks of work with little warning and provided shoddy medical documentation only upon his return.

Mr. Fong also argues that because he *did* provide documentation—albeit deficient documentation—on October 2, 1985, he satisfied what was required of him. Since it was documented that his absences *were* caused by illness, he argues, he cannot be blamed for them. The Court disagrees. To agree with Mr. Fong on this point would mean that an employee who contends that absences are due to a medical condition can avoid sanction by treating demands for documentation with a grain of salt, continuing to miss work without documentation, and, when discharge becomes imminent, quickly rustling up documentation that justifies, retroactively, the undocumented absences. This behavior—which in essence reflects Mr. Fong's behavior—would be justifiable grounds for discharge.

Mr. Fong also claims that this Court must overturn the MSPB's conclusion that he was *not* incapacitated for work during the last two weeks of September, 1985. He supports this argument with testimony from his doctor before the MSPB that he *was* incapacitated. Although the Court defers to the MSPB's findings of fact and credibility judgments, the Court also concludes that it does not need to resolve this factual dispute, because it concludes that defendant was warranted in firing Mr. Fong whether or not Mr. Fong was justified in being absent in September 1985. The question is not merely whether Mr. Fong was ill or incapacitated, but whether he provided the required documentation within the required time. Failure to do so, even if it is later proven that the illness is bona fide, may be in itself a reason for discharge. This is true because the purpose of the medical documentation under 5 C.F.R. Part 339 is not simply to determine whether or not an employee is ill or sick. It also provides the employer with an evaluation of the employee's condition, enabling the employer to anticipate the timing or frequency of the absences, to determine whether special steps must be taken,

to decide whether reassignment is necessary, and to take steps to prepare for unexpected absences that may cause substantial hardships for the employer. Following as it did his chronic absences from work during the previous year, and occurring just before the unexpected two-week absence in September, 1985, Mr. Fong's failure to diligently and expeditiously provide the medical documentation demanded of him—or at least prove that he was doing all that he could to try to secure this documentation—was enough to justify his firing.

Plaintiff was required to provide the documentation in order to justify previous absences, to provide his employer with an adequate understanding of his condition—leading to the first reason for the discharge—and to provide an explanation and a warning of future absences *before* they occurred—leading to the third reason for the discharge. Mr. Fong failed in his responsibilities. Therefore, under the Civil Service Reform Act, 5 U.S.C. § 7703, the Court finds that the MSPB acted reasonably in concluding that defendant was justified in firing Mr. Fong.

### III. Alcoholism and the Rehabilitation Act

The focus of this case shifted considerably in 1988, when Mr. Fong presented an affidavit and medical documentation that he has been suffering from Post–Traumatic Stress Disorder, accompanied by secondary alcoholism, as a result of his harrowing experiences in Vietnam. Accepting these facts as true, the Court nonetheless concludes for two reasons that defendant is entitled to summary judgment on this issue.

■ First, the facts as presented show that Mr. Fong's alcoholism was *not* related to the two most important of the three reasons for his firing, which were based on his failure to provide the required medical documentation for his other, non-alcohol-related illness. Mr. Fong only raises the alcoholism factor in relation to the second reason for his firing—the 36 hours of AWOL accumulated from June 6 through September 19, 1985. *See* Plaintiff's Memo-

randum in Support of Summary Judgment (corrected copy) at 22. This second reason was clearly less important than and redundant to the first and third reasons for firing, which do not involve the alcoholism factor. These reasons are discussed in Part II of this opinion.

■ Second, the facts as presented do *not* in themselves make out a sufficient claim of discrimination against Mr. Fong because of alcoholism. The Court concludes that because Mr. Fong never informed his employer of his problem, and because the employer did not have enough "signs" to put it on "notice" of alcoholism, as suggested by Mr. Fong, the employer did not violate the legal requirements.

Under the law of the Rehabilitation Act, a federal agency must not discriminate against an employee with a handicap and must take steps to reasonably accomodate this condition. *See* 29 U.S.C. §§ 791–794; 29 C.F.R. § 1613.704(a); *Whitlock v. Donovan*, 598 F.Supp. 126 (D.D.C.1984), *aff'd sub nom. Whitlock v. Brock*, 790 F.2d 964 (D.C.Cir.1986). Courts have included alcoholism as a handicap that is protected by the Act. *See Whitlock; LeMere v. Burnley*, 683 F.Supp. 275, 278 (D.D.C.1988).

When presented with an employee whose work is suffering because of his alcoholism, a federal employer must first offer counseling to the employee. *See Whitlock*, 598 F.Supp. at 133–34. If the employee rebuts the offer, the employer must offer a "firm choice" between treatment and discipline. Then, the agency is obligated to evaluate whether keeping the employee would represent an undue hardship and to conduct a fitness-for-duty examination before taking disciplinary steps. *Id.* It is undisputed that defendant did *not* provide Mr. Fong with the protections as set forth in *Whitlock* and other cases. Instead, defendant contends that it was not required to take these steps because it did not *know* that Mr. Fong was suffering from alcoholism.

The facts as presented by Mr. Fong show that he has had a serious drinking problem since his return from Vietnam, although

the problem apparently did not substantially affect his attendance at work until 1985. At no time did Mr. Fong tell his supervisors that he was suffering from alcoholism, and at no time did his supervisors discuss the issue with him. Nonetheless, Mr. Fong argues that defendant should have taken the steps set forth in *Whitlock* because the employer "should have known" that he was suffering from alcoholism.

First, Mr. Fong notes that a co-worker once approached a supervisor and stated that Mr. Fong was "having some problems" and that the supervisor "could get him some professional support." The supervisor told the co-worker that Mr. Fong's problems were the responsibility of Mr. Fong. When asked at a deposition what type of "professional help" he was referring to, the co-worker said "both psychiatric and substance abuse," the latter for "drinking and perhaps drugs." It is not clear when the short discussion took place, but the evidence points to its being at least two years before 1984, when Mr. Fong's absences began to become a problem. The supervisor to whom the co-worker spoke was not the same supervisor who suggested firing Mr. Fong in 1985.

Second, Mr. Fong notes that an employee relations official of the Treasury Department stated in a deposition that Mr. Fong's supervisors, while discussing his situation, "raised" the possibility of alcohol being a factor for his absences. The supervisors did not follow up on this issue, nor is there any evidence that it was discussed further.

These facts, combined with the observation that alcohol must have been "noticeable" on Mr. Fong's breath, leads plaintiff to argue that defendant should have known of his alcoholic condition, requiring that defendant take the steps outlined in *Whitlock.* In support of this theory of constructive notice, Mr. Fong cites language in *Whitlock,* which states that the requirements are triggered when the work deficiencies are "suspected" to be due to alcohol. 598 F.Supp. at 133. In addition, a federal court in Florida has held that "[l]ack of knowledge relieves the agency of the responsibility for reasonable accomoda-tion, but this duty attaches where the agency has knowledge 'of factors from which the handicap might reasonably be inferred.'" *Ferguson v. United States Department of Commerce,* 680 F.Supp. 1514, 1517 (M.D.Fla.1988) (*citing Brink v. Veterans Administration,* 4 M.S.P.B. 419, 4 M.S.P.R. 358 (1980)). In the *Ferguson* case, the court ruled that the employer "should have known that Plaintiff was an alcoholic" because of his chronic absenteeism, frequent failure to return to work when promised, and failure to obtain leave slips, after years of exemplary service. Because the facts in *Ferguson* apparently so closely resemble those of the instant case, Mr. Fong argues that he should have received the same protection that the *Ferguson* court said was due to Mr. Ferguson. This Court disagrees.

The *Ferguson* case explores the outer limits of the protection created by the courts under the Rehabilitation Act for employees suffering from alcoholism. For a number of reasons, this Court rejects the opportunity to extend even further the protections to those who have hidden from their employers the fact that they suffer from alcoholism.

First, there are crucial distinctions between the instant case and *Ferguson,* despite the obvious similarities. Specifically, Mr. Fong admits that he missed only a few days of work because of his alcoholism, unlike Mr. Ferguson, who missed many weeks. In Mr. Fong's case, the bulk of his absences were caused by his lower-back problem; accordingly, his employer, unlike Mr. Ferguson's employer, was reasonable in focusing little attention and thought to the few absences that it turns out *were* alcohol-related.

Second, the Court believes that there must be limits to the extent to which employers are required to ferret out and investigate possible cases of alcoholism and then confront their employees with their suspicions about alcoholism. Although courts have stated that alcohol is a handicapping condition for which the employee should be aided, it is also clearly *not* like most other handicaps, which are either

readily noticeable or which do not trigger denial mechanisms in employees. Although this Court declines to try to set an exact standard for how much knowledge is required to trigger the protections for employees suffering from alcoholism, it *does* concludes that defendant in the instant case did not have enough "signs" to require that it take steps to try to help Mr. Fong treat his alcoholic condition before discharging him.

The statement by the co-worker to the supervisor about Mr. Fong apparently came considerably before Mr. Fong started piling up excessive numbers of absences. While the supervisor could have approached Mr. Fong at that time, there is nothing in the law that requires that federal employers act as general psychological and medical counselors to employees whose purported problems have not manifested themselves at work. The supervisor also could have noted the comments in Mr. Fong's personnel record, but the Court knows of no obligation to do so; indeed, it may be objectionable in many quarters to place such rumours about unspecified personal "problems" in an employee's records. Finally, although the statement might be enough to constitute "constructive notice" in a business contract case, the Court concludes that a federal employer need not "remember" such statements when work problems arise much later, especially when the supervisor to whom the statements were told is not the one handling the discipline of the employee.

In addition, the Court concludes that the fact that Mr. Fong's supervisors "raised" the possibility of alcoholism does not mean that the protections are triggered. The possibility of alcoholism always exists when an employee is often absent; so are the possibilities of drug abuse, gambling, and a host of other things. Without any more evidence *at the time* of alcoholism—for example, co-workers mentioning alcohol on the employee's breath—the employer should not be penalized merely for raising the issue and then dropping it for lack of additional evidence. To engage in a subjective analysis into the thoughts of supervisors might encourage supervisors to "keep quiet" about possible suspicions and thus paradoxically decrease the number of times when employees actually receive help for their alcoholism. Focusing on an objective standard—Should the employer have known of the alcoholism?—rather than a subjective test—Did the employer ever actually raise the issue?—seems preferable to this Court.

A final factor convincing the Court that defendant acted reasonably was that Mr. Fong consistently gave other explanations —car trouble, etc.—for the absences that he now says were caused by alcohol, just as he gave the explanation that most of his absences were due to back trouble—allegations that apparently turned out to be true. Indeed, the defendant's chief complaints about the absences that were not related to back problems were that Mr. Fong failed to document his explanations—just as he failed to document his back-related absences—and not that the explanations were inherently suspicious.

In sum, the Court concludes that defendant was not required to provide Mr. Fong with the protections that must be given to *known* alcoholics under courts' interpretation of the Rehabilitation Act, in large part because it was not presented with enough "signs" that it "should have known" that Mr. Fong was suffering from alcoholism that caused work deficiencies. Finally, it is repeated that the claim concerning alcoholism is not the issue that is dispositive of this case, because the Court concludes that the firing of Mr. Fong was justified for reasons wholly unrelated to the issue of alcoholism-related absences.

### IV. Procedural Disputes

Finally, plaintiff alleges a number of procedural errors by the MSPB, including a denial of a motion to compel discovery, a denial of motions for subpoenas, and a denial of a motion for sanctions. Considering both the deference that must be given to the MSPB on such matters and the substance of the allegations, the Court finds that plaintiff's claims are without merit.

The most important dispute is over the MSPB's refusal to impose sanctions on

the Treasury Department for allegedly falsely answering interrogatories. Plaintiff filed interrogatories to defendant asking whether his supervisors discussed the possibility of Mr. Fong having a drinking problem. The responses, which said that a drinking problem was not discussed, were signed by a Treasury official who did not actually contact certain supervisors before signing the responses. At the MSPB hearing it was revealed that the possibility of a drinking problem *was* mentioned by Mr. Fong's supervisors.

The MSPB denied the motion for sanctions, stating that the responses did not violate MSPB discovery rules nor represent to be anything other than statements made by the person. signing the responses. Moreover, the MSPB found that the responses did not prejudice Mr. Fong's case. The Court agrees with the MSPB, adding that the issue of and evidence concerning Mr. Fong's alcoholism problem has been considered *de novo* by this Court.

### V. Orders

In accordance with the opinion of this 31 day of January, 1989, it is

ORDERED that plaintiff Fong's motion for summary judgment is DENIED; it is further

ORDERED that defendant Department of the Treasury's motion for summary judgment is GRANTED.