**Edward L. GRIMES, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. 92–6025–CV–SJ–8.**

United States District Court,
W.D. Missouri,
St. Joseph Division.

Dec. 3, 1994.

Edward Louis Grimes, pro se.

Jerry L. Short, U.S. Attorney's Office, Kansas City, MO, for defendant.

### ORDER

STEVENS, Chief Judge.

Plaintiff Edward Grimes brought this employment discrimination suit to challenge his discharge from the Postal Service. Plaintiff maintains that he was wrongfully discharged because of his alleged handicap, addiction to marijuana, in violation of the Rehabilitation Act of 1973 ("Act") and the "Drug Abuse and Treatment Act." Plaintiff also seeks review, under the Civil Service Reform Act, 5 U.S.C. § 7703, of the decision of the Merit Systems Protection Board ("MSPB") upholding his discharge. The parties' cross motions for summary judgment are before the court. For the reasons stated below, summary judgment is granted in favor of defendant.

### I. FACTS

Plaintiff Edward Grimes worked for the United States Postal Service ("Postal Service") from 1976 until May 5, 1989, when he was terminated from his position as Postmaster of Ridgeway, Missouri. While employed, Grimes consistently earned excellent performance evaluations, was promoted three times, and received two special assignments. However, the United States Postal Inspection Service ("Inspection Service") allegedly received reports indicating that Grimes was distributing drugs to youth. The Inspection Service was unable to confirm these reports until the fall of 1988, when John Ralls, Grimes's former roommate, agreed to act as an confidential informant for the Inspection Service.

On December 19, 1988, Ralls, acting on behalf of the Inspection Service, called Grimes at the Ridgeway post office and asked Grimes to provide him with some marijuana. Grimes hesitated and indicated to

Ralls that he was unable to procure the marijuana Ralls wanted. During subsequent meetings on December 23, 1988, December 26, 1988, and January 7, 1989, Grimes gave Ralls several marijuana cigarettes.

Based on these events, the Inspection Service obtained a search warrant. On January 10, 1989, the Inspection Service arrested Grimes and searched his home. The inspectors found marijuana and drug paraphernalia.

On January 17, 1989, the Inspection Service provided Grimes's supervisors with a memorandum that described the investigation and arrest. Grimes's immediate supervisor, T.W. Keeney, determined that Grimes should be removed, particularly in light of Grimes's highly visible and responsible position as Postmaster of a rural community.

On January 30, 1989, Keeney issued Grimes a notice proposing to terminate his employment based on the alleged violation of the Postal Service's Code of Ethical Conduct ("Code"),[1] which governs some behavior of Postal Service employees. The Code provides that criminal conduct and/or illegal drug use may be grounds for removal from the Postal Service. In response to the notice of possible termination, Grimes asserted that the Inspection Service initiated the investigation because of Grimes's homosexuality, an assertion Grimes later withdrew.

After considering Grimes's response and other available information, Grimes's second level supervisor, James Wood, determined that removal was appropriate. In a letter dated April 25, 1989, Mr. Wood sustained the proposed removal.

Soon after the arrest and proposed termination, sometime between January 19, 1989, and February 1, 1989,[2] Grimes voluntarily enrolled in the Postal Service's Employee Assistance Program ("EAP"). Although Grimes attended weekly meetings and met with a counselor regularly, he refused to submit to urinalysis testing.

On February 18, 1989, Grimes filed an Equal Employment Opportunity Complaint against the agency, claiming that he had been discriminated against because of his mental handicap, addiction to marijuana.

On May 22, 1989, a month after the Postal Service issued its final letter of removal, the EAP staff provided a report to postal management, confirming Grimes's participation in the EAP program.

Based on the earlier search and investigation, authorities charged Grimes with possession of marijuana and drug paraphernalia, and distribution of marijuana.[3] The distribution charges were dropped. On June 7, 1989, Grimes pled guilty to and was convicted of misdemeanor charges of possession of marijuana and drug paraphernalia.

On July 3, 1989, during a prehearing conference before an administrative judge with the Merit Systems Protection Board ("MSPB"), Grimes stipulated that he had pled guilty to possessing knowingly marijuana and drug paraphernalia. He also stipu-

1. This code provides:

> 666.53 Unacceptable conduct. No employee will engage in criminally dishonest, notoriously disgraceful or immoral conduct or other conduct prejudicial to the Postal Service. Conviction of a violation of any criminal statute may be grounds for disciplinary action by the Postal Service, in addition to any other penalty by or pursuant to statute.
> 661.55 Illegal Drug Use. Illegal use of drugs may be grounds for removal from the Postal Service.
> 666.2 Behavior and Personal Habits. employees are expected to conduct themselves during and outside of working hours in a manner which reflects favorably upon the Postal Service.

Administrative Record Vol. 1 at 12–15.

2. In a letter from Norma J. Costa, an Employee Assistance Program ("EAP") specialist with the Postal Service, to Sandra L. Williams. Labor Relations Representative, dated May 22, 1989, Ms. Costa states that Grimes enrolled in the EAP on January 19, 1989. In his Suggestions in Support of Summary Judgment, Mr. Grimes likewise claims that he entered the EAP on January 19, 1989. In a letter from Ms. Costa to attorney Robert Randolph, dated March 33, 1989 [sic], Ms. Costa states that Grimes enrolled in the EAP on February 1, 1989.

3. Plaintiff was charged with: (1) giving marijuana cigarettes to John D. Ralls on December 23 and 26, 1988, and January 7, 1989; (2) possession of marijuana; and (3) possession of drug paraphernalia.

lated that he had given John Ralls marijuana cigarettes on two occasions.

On September 5, 1989, the MSPB issued a decision approving Grimes's termination based on his violation of the Code of Ethical Conduct. This decision became final on October 10, 1989. On February 23, 1992, the MSPB denied Grimes's petition for review because it failed to meet the criteria set forth at 5 C.F.R. § 1201.113(b). Attached to the February 1992 order were guidelines on how Grimes could pursue his claim in federal court.

On April 19, 1992, Grimes initiated this action against the Postal Service. Grimes claimed that defendant terminated his employment because of a "handicapping condition," unreasonably and in violation of 42 U.S.C. § 290 and the Rehabilitation Act.

Plaintiff claims that he used marijuana for over twenty years prior to his discharge. Plaintiff also admits to using marijuana on one occasion after enrolling in the EAP. Plaintiff has presented evidence to substantiate his claim of cannabis dependency.

## II. DISCUSSION

### A. Standard for summary judgment

■■■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the nonmovant. *Raschick v. Prudent Supply, Inc.*, 830 F.2d 1497, 1499 (8th Cir.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988). The party seeking summary judgment bears the initial burden of demonstrating that an essential element of the nonmoving party's case is lacking. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to come forward with sufficient evidence to show that there is a genuine factual controversy as to that issue. *Id.; see also*

Fed.R.Civ.P. 56(e). To establish the existence of a genuine issue of fact for trial, the nonmoving party must produce evidence that would allow a reasonable fact finder to resolve that issue in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If the nonmoving party fails so to respond, summary judgment, if appropriate, should be entered against that party. *Id.*

### B. Analysis

Because plaintiff is proceeding *pro se*, it is somewhat difficult to ascertain the legal bases of plaintiff's claims. What appears to be at issue are (1) whether plaintiff is entitled to relief under the Rehabilitation Act, (2) whether plaintiff is entitled to relief under a statute referred to by plaintiff as the "Drug Abuse Act," "Drug and Alcohol Abuse Act," or "Drug Abuse and Treatment Act," and (3) whether the decisions of the MSPB should be reversed or otherwise modified.

### 1. Rehabilitation Act Claim

■■■ To establish a *prima facie* case under the Rehabilitation Act, plaintiff must show that (1) at the time of the alleged discrimination, he was an "otherwise qualified individual with a disability" and (2) that he was discriminated against solely by reason of his handicap. 29 U.S.C. § 794(a); *see also Norcross v. Sneed*, 755 F.2d 113, 116–17 (8th Cir.1985). Plaintiff fails to make a prima facie showing under both prongs.

To qualify for protection under the Act, plaintiff must first show that he is an "otherwise qualified individual with a disability." An "individual with a disability" is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). "Major life activities include: functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c).

Plaintiff fails to show that his marijuana use resulted in a substantial impairment of a major life activity. In fact, plaintiff makes inconsistent arguments. On one hand, he claims that his daily marijuana use did not affect his ability to work. Amended Complaint at 7. On the other hand, the claims is made that his marijuana "addiction" affected his work performance in a positive manner. He argues that he "performed his job well because he was constantly under the influence of his addiction and had learned his job while under this influence." Plaintiff's Suggestions in Support of Motion for Summary Judgment at 15. That position is at best of doubtful credibility.

Similar inconsistencies emerge elsewhere in plaintiff's argument. For example, although plaintiff states that his marijuana use had no adverse impact on his work, he argues that it "impaired most of his leisure time." Amended Complaint at 7. Plaintiff does not articulate the specific ways in which his addiction impaired his leisure activities, nor does he explain how the addiction selectively impaired him only during non-working hours. Plaintiff alleges that his addiction influenced his behavior, but he fails to offer evidence to show the significant degree of impairment required for statutory protection. To find that plaintiff's marijuana addiction substantially impaired a major life activity would strip the term "substantial impairment" of its intended meaning.

Even if plaintiff could demonstrate substantial impairment, he must show that he was not actively using illegal drugs at the time his termination was proposed. Persons suffering from drug addiction may be regarded as "otherwise qualified handicapped individuals." *Taub v. Frank,* 957 F.2d 8, 9–10 (1st Cir.1992); *Wallace v. Veterans Admin.,* 683 F.Supp. 758, 761 (D.Kan.1988). However, courts extend protection only to persons who have successfully completed a drug rehabilitation program or are currently participating in a program and are not using drugs at the time of determination. The statutory term "qualified individual with a disability" specifically excludes any individual "currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 29 U.S.C. § 706(8)(C)(i).[4] To regard current illegal drug users as "handicapped individuals" would be "antithetical to the goals of sound law enforcement and trivialize[ ] the commonly understood meaning of the word[s] 'handicapped' " or disabled. *Burka v. New York City Transit Auth.,* 680 F.Supp. 590, 597 (S.D.N.Y.1988).

Plaintiff admits that he was using marijuana at the time his removal was proposed. He admits that he used marijuana once after enrolling in the EAP. Moreover, after entering the EAP, he refused to submit to urinalysis. A.R. Vol. I at 116. Because plaintiff was using illegal drugs at the time of his arrest and proposed termination, the Court finds that he was not a person with a "disability."

Plaintiff argues that whether he was "currently engaging in the use of illegal drugs" at the time of his discharge, and thus beyond the aegis of protection offered by the statute, should be determined on the date his discharge was finalized, not before. This Court rejects such an interpretation of the Act.

The Second Circuit has held that whether an employee is a current substance abuser shall be determined on the effective date of

---

4. The Act reads:

(C)(i) For purposes of subchapter V of this chapter, the term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use.

(ii) Nothing in clause (i) shall be construed to exclude as an individual with a disability an individual who—

(I) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use:

(II) is participating in a supervised rehabilitation program and is no longer engaging in such use; or

(III) is erroneously regarded as engaging in such use, but is not engaging in such use; except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in subclause (I) or (II) is no longer engaging in the illegal use of drugs.

29 U.S.C. § 706(8).

discharge, not earlier. *Teahan v. Metro–North Commuter R.R.*, 951 F.2d 511 (2d Cir.1991). The facts of *Teahan* are distinguishable from the instant case.[5] Teahan, unlike Grimes, notified his employers of his condition long before his termination was proposed. Teahan identified his problem and formally sought help before the termination process was initiated. Grimes smoked marijuana every day for over twenty years, yet he did not identify his problem to his employers or seek assistance until after inspectors discovered drugs in his home, after he was arrested, and after the agency had initiated termination proceedings.

The Rehabilitation Act is designed to protect a drug addict who voluntarily identifies his problem, seeks assistance, and stops using illegal drugs.[6] Grimes did not voluntarily identify himself as a drug addict. He was identified as a drug user by others and through the efforts of the Inspection Service. He informed his employer of his problem only after he was arrested and his continued employment was in jeopardy. Moreover, he did not stop using illegal drugs after he entered the EAP. The Act should not be construed to provide a safe "haven to protect substance abusers who have not in the past sought—nor do they seek in the present—help." *Teahan*, 951 F.2d at 518; *see also Burka v. New York City Transit Auth.*, 680 F.Supp. 590, 597 (S.D.N.Y.1988). Nor should it shield a long-term user of illicit drugs who seeks assistance only after termination proceedings have begun.

■ Finally, the Act protects only "otherwise qualified" individuals suffering from disabilities. Plaintiff fails to show that he was otherwise qualified, that he was able to meet all of the Postal Service's requirements for a postmaster in spite of his handicap. *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). The Act does not provide a remedy for any person whose use of drugs prevents that individual from performing duties of the job in question. *Heron v. McGuire*, 803 F.2d 67, 68 (2d Cir.1986); *Burka v. New York City Transit Auth.*, 680 F.Supp. 590, 596 (S.D.N.Y.1988).

Grimes has not demonstrated that he is "otherwise qualified" to perform the duties of a postmaster, who holds an important position in a rural community. He or she must command respect from community residents, enjoy the full trust of superiors, and ensure that contraband materials and drugs are not sent through the mails. Plaintiff has not shown that but for his drug addiction, he would be qualified to serve as postmaster of Ridgeway, Missouri.

■ To bring a claim under the Act, plaintiff must also show that he was terminated solely because of his alleged disability. Plaintiff was terminated because he possessed and distributed illegal drugs. In doing so, plaintiff broke the law and violated

---

**5.** Appellant Teahan was employed as a telephone and telegraph maintainer from 1983 until 1987. During his employment, Mr. Teahan frequently missed work, claiming that his unexcused absences stemmed from his alcohol and drug addiction. In 1986, Teahan voluntarily enrolled in a thirty day rehabilitation program. After his release from the program, he relapsed into substance abuse. In the fall of 1987, Teahan informed his employer of his substance abuse problem. Teahan then missed work on several days in December, 1987. On December 28, Teahan voluntarily enrolled in another rehabilitation program. On that same date, Teahan's employer charged Teahan with excessive absenteeism. Teahan successfully completed the rehabilitation program, returned to work on January 28, 1988, and was not absent from work thereafter. Teahan was terminated on April 11, 1988.

The Second Circuit evaluated appellant Teahan's status on of the date of his discharge and

found that Teahan was not "currently" using illegal drugs as of that date. The *Teahan* court ruled that an employer may not justify discharging an employee based on past substance abuse problems, if the employee has overcome these problems or is undergoing treatment for the problems. *Teahan v. Metro–North Commuter R.R.*, 951 F.2d 511 (2d Cir.1991).

**6.** Executive Order No. 12564, *reprinted at* 5 U.S.C.A. § 7301, directs agencies to discipline any employee who is found to use illegal drugs, unless the employee: "(1) Voluntarily identifies himself as a user of illegal drugs or who volunteers for drug testing ... prior to being identified through other means; (2) Obtains counseling or rehabilitation through an Employee Assistance Program; and (3) Thereafter refrains from using illegal drugs." Executive Order No. 12564, § 5(b).

the Code of Ethical Conduct. No evidence suggests that the Postal Service discharged plaintiff because he was addicted to marijuana. In fact, no evidence suggests that the agency was even aware of plaintiff's addiction prior to his claiming it.

Grimes testified before the MSPB that he did not use marijuana before or during work, and he asserted that his marijuana use did not adversely affect his work performance. Plaintiff attempts to argue that his addiction enhanced his performance. There is no evidence to substantiate such a claim. In fact, there is no reason to believe that Grimes was fired for anything other than his breach of the Code.

■ Plaintiff argues that his addiction caused him to engage in the activities for which he was discharged. To establish an affirmative defense of addiction, an individual must show that he was under the influence of drugs or alcohol when he committed the offense. *Terry v. Department of the Navy*, 39 M.S.P.R. 565, 571 (1989); *Simms v. United States Postal Serv.*, 39 M.S.P.R. 308 (1988); *Brinkley v. Veterans Admin.*, 37 M.S.P.R. 682, 688 (1988). To assert that he was under the influence of the addiction itself is insufficient.

Plaintiff claims that on each occasion when he provided Ralls with marijuana, he had smoked marijuana with Ralls prior to providing Ralls with additional marijuana. However, plaintiff offers no evidence to show that he was acting under the influence of an addictive substance when he chose to purchase or possess marijuana.

■ Moreover, to establish an affirmative defense of addiction, plaintiff must show that his substance abuse impaired him such that he lacked control over his actions and that his capacity for exercising judgment was diminished at the time of the misconduct. *Simms v. United States Postal Serv.*, 39 M.S.P.R. 308, 311 (1988). Plaintiff has not demonstrated that he used marijuana and that such use destroyed his ability to exercise free will, causing him to possess and distribute marijuana. On the contrary, plaintiff explains that fear, rather than incapacitation resulting from substance abuse, caused him

to provide Ralls with marijuana. Plaintiff claims that he was afraid that Ralls would threaten his personal safety or property; plaintiff asserts that he "gave Ralls marijuana because he was afraid of Ralls' temper and not being able to handle it." Plaintiff's Suggestions in Support of Summary Judgment at 29. Even if plaintiff had been using marijuana and such use impaired his thinking and reasoning abilities, plaintiff admits that he deliberately decided to cope with his fear of Ralls by giving Ralls marijuana. Plaintiff exercised his free will and chose to provide Ralls with marijuana. Therefore, plaintiff's drug addiction was not the cause of his misconduct, so plaintiff cannot establish an affirmative defense of addiction.

No evidence revealed on-duty addiction-related behavior by plaintiff. Consequently, it is implausible to believe that the Postal Service fired plaintiff solely because of plaintiff's addiction. Nor does the evidence suggest that the misconduct for which Grimes was terminated was caused by and occurred while plaintiff was under the influence of a mind-altering substance.

■ The Act does not prohibit an employer from discharging an employee who commits a crime or otherwise engages in improper conduct when the improper conduct, rather than the alleged addiction, is the reason for discharge. *Richardson v. United States Postal Service*, 613 F.Supp. 1213, 1214–16 (D.D.C.1985); *Huff v. Israel*, 573 F.Supp. 107 (M.D.Ga.1983); *Guerriero v. Schultz*, 557 F.Supp. 511 (D.D.C.1979). Plaintiff was discharged because he committed a crime and violated the Code by possessing and distributing marijuana, not because he was addicted to marijuana.

■ Plaintiff also argues that the Postal Service failed to accommodate his handicap of marijuana addiction. Plaintiff claims that his supervisors should have known of and accommodated his alleged addiction. This Court rejects this contention because plaintiff fails to demonstrate that defendant received notice giving rise to such a duty.

■ The duty to make reasonable accommodation for an employee's handicap does not attach until the employer has knowl-

edge of factors from which the handicap might be inferred. *Fong v. United States Dep't of Treas.*, 705 F.Supp. 41, 46 (D.D.C. 1989). Federal employers are not required to "act as general psychological and medical counselors to employees whose purported problems have not manifested themselves at work." *Fong*, 705 F.Supp. at 47. Nor does the Act create a remedy for an employee who claims that his employer failed to fulfill a duty to accommodate sometime in the past. *Richardson v. United States Postal Serv.*, 613 F.Supp. 1213 (D.D.C.1985).

Plaintiff states that his handicap never impaired his work performance. Plaintiff's supervisors stated that they were wholly unaware of plaintiff's alleged addiction until he offered it as a defense to his removal. The only information postal inspectors had previously received concerned Grimes's alleged distribution of drugs, not his addiction to drugs. Because plaintiff repeatedly asserts that his addiction was well-concealed at work, this Court cannot hold that there was constructive notice.

Accordingly, this Court finds that plaintiff has not established a claim under the Act and therefore, plaintiff is not entitled to reinstatement or any other relief under the Act.

## 2. "Drug Abuse Act" Claim

 Plaintiff alleges that defendant violated a statute known variously as the "Drug Abuse and Treatment Act," the "Drug Abuse Act," or the "Drug and Alcohol Abuse Act." Plaintiff's initial complaint cites the "Drug Abuse and Treatment Act," 42 U.S.C. § 290, which establishes the National Institutes of Health Management Fund and does not provide a means through which plaintiff can seek relief. Sections 290aa through 290ee of 42 U.S.C. deal with alcohol, drug abuse, and mental health programs, but do not give rise to a cause of action in this claim. 42 U.S.C. § 290ee–1(b) prohibits a federal employer from disqualifying an employee or prospective employee solely on the grounds of prior drug use. However, in this case, Grimes was terminated on the basis of ongoing drug use, not prior drug use. Only employment decisions based solely on the grounds of prior drug abuse are statutorily

prohibited. Agency action based on current drug use is not prohibited by the Act. *Hougens v. United States Postal Serv.*, 38 M.S.P.R. 135 (1988).

 Likewise, the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801–971 ("Comprehensive Act"), does not provide a basis under which a former employee may bring a wrongful discharge claim. The Comprehensive Act was enacted to provide a federal system for control of drug trafficking and to prevent drug abuse. *United States v. Greenberg*, 334 F.Supp. 364 (D.C.Pa.1971). The Act regulates controlled substances and outlines provisions designed to limit import and export of illegal drugs. Consequently, plaintiff's argument that he is protected under a statute known as the "Drug Abuse Act" or the "Drug and Alcohol Abuse Act" is ill-founded.

## 3. Review of Merit Systems Protection Board Action

Plaintiff claims that the MSPB's decision to terminate him was unreasonable and should be overturned. A court must uphold and MSPB's decision unless it was arbitrary, capricious, an abuse of discretion, not in accordance with law or procedure, or unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Fong v. United States Dep't of Treasury*, 705 F.Supp. 41, 43 (D.D.C.1989). In a discrimination claim, the facts are subject to a *de novo* review. 5 U.S.C. § 7703(b)(2).

 An agency has broad latitude in choosing a penalty for employee misconduct. *Parker v. United States Postal Serv.*, 819 F.2d 1113, 1115–16 (Fed.Cir.1987). When reviewing an agency's decision, the MSPB must conscientiously consider all relevant factors and ensure that the agency's decision was within "tolerable limits of reasonableness." *Schaffer v. United States Postal Serv.*, 39 M.S.P.R. 153, 156 (1988). In *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280, 305–06 (1981), the Merit Systems Protection Board provided an exemplary list of factors to be considered when as-

sessing the reasonableness of an agency's decision.[7]

Factors existed which might have led the Postal Service to a different result. Plaintiff was a valued and highly praised employee for thirteen years. During his tenure, plaintiff was promoted into positions of responsibility. He actively supported community activities and appeared to be well-respected in the community he served. Moreover, plaintiff's misconduct did not adversely affect his work performance. It neither occurred on agency premises, nor was it for personal financial gain. Plaintiff's post-arrest behavior indicated a desire and propensity for rehabilitation. Considering plaintiff's stellar record and his many contributions as a employee, it would not have been unreasonable if the Postal Service had elected to retain plaintiff as an employee and encourage him in his rehabilitation efforts.

These mitigating factors do not negate the seriousness of plaintiff's misconduct; nor do they indicate that retention was the only appropriate option. Plaintiff's misconduct was ongoing. Plaintiff used marijuana every day for over twenty years. Plaintiff held a supervisory role that required him to monitor the performance of his staff members. Plaintiff had extensive contact with the public. His misconduct garnered negative publicity and reflected poorly on the reputation of the Postal Service. The MSPB properly considered many of the factors enunciated in

*Douglas* and found that the Grimes's dismissal was not inappropriate.

Plaintiff cites cases in which the MSPB reviewed the Postal Service's decision to discharge employees for drug-related offenses, and determined that suspension, rather than discharge was appropriate. *See Tucker v. United States Postal Serv.*, 43 M.S.P.R. 515 (1990) and *Schaffer v. United States Postal Serv.*, 39 M.S.P.R. 153 (1988). The actions reviewed in those decisions involved employees who, unlike this plaintiff, did not hold positions of special trust or interact with the public extensively. Plaintiff was not an entry level employee. He was a postmaster, charged with responsibilities of leadership. The MSPB appropriately considered plaintiff's position in evaluating the appropriateness of dismissal.

▮▮▮▮ When reviewing the MSPB's decision, a court must determine whether the MSPB acted in an arbitrary and capricious fashion. *Id.* The Postal Service terminated plaintiff because his conduct violated the law and the Code of Ethical Conduct, and consequently undermined the agency's trust and confidence in his ability to properly perform the duties of postmaster. This Court finds substantial evidence to support the MSPB's decision and that the decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or procedure. 5 U.S.C. § 7703(c). This Court af-

---

7. These factors include:

(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
(2) the employee's job level and type of employment, including supervisory of fiduciary role, contacts with the public, and prominence of the position;
(3) the employee's past disciplinary record;
(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;
(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;
(7) consistency of the penalty with any applicable agency table of penalties;
(8) the notoriety of the offense or its impact upon the reputation of the agency;
(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
(10) potential for the employee's rehabilitation;
(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others involved in the matter; and
(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employees or others.
*Douglas*, 5 M.S.P.R. at 305–06.

firms the MSPB's decision to discharge plaintiff.

## III. CONCLUSION

Accordingly, it is

ORDERED that defendant's motion for summary judgment is granted. It is further

ORDERED that plaintiff's motion for summary judgment is denied.